UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:14-CV-00538-JHM

FIDELITY & GUARANTY LIFE                                            PLAINTIFF
INSURANCE CO.

V.

SARINPRAPA TEEMA, ET AL                                             DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on cross motions for summary judgment filed by Defendant Tamara Twist [DN 76], and by counsel on behalf of Defendant Sarinprapa Teema (hereinafter "Teema"), as trustee of the Martin R. Twist Family Trust [DN 79], and Intervenor Plaintiff Hunter R. Twist, by next of friend, Michelle Tomes, his mother [DN 78]. Fully briefed, this matter is ripe for decision. For the reasons stated below, Teema's motion for summary judgment is **GRANTED**, and the motions for summary judgment by Tamara Twist and Hunter R. Twist are **DENIED**.

**I. BACKGROUND**

This action involves competing claims by two trusts to the proceeds of a term life insurance policy. Martin Twist purchased the policy from Plaintiff Fidelity and Guaranty Life Insurance Company, naming the Martin R. Twist Trust as the beneficiary of the policy on August 25, 2003. However, on April 20, 2007, Twist changed the beneficiary of the policy to the Hunter R. Twist Irrevocable Trust, using Fidelity and Guaranty's standard change of beneficiary form.

On March 26, 2013, Martin Twist once again sent to the insurance company a change of beneficiary request using the company's standard form to change the beneficiary under the

policy. This time, the beneficiary was listed as the "Martin R. Twist Family," with no mention of the word "Trust." (Pl.'s Compl. [DN 1-5] at 1.) Fidelity and Guaranty subsequently sent Twist a letter on April 12, stating that the company had "received a request to process a beneficiary change" on his policy, but in order to "process this request," he would need to provide a copy of the trust documentation. (Pl.'s Compl. [DN 1-6] at 1.) Twist never provided the trust documents to the company. The actual Martin R. Twist Family Trust (hereinafter "Family Trust") document was formally executed on March 29, 2013, three days after the beneficiary request form was sent by Martin Twist to the company.

Martin Twist died on February 23, 2014. Subsequently, on March 11, 2014, Fidelity and Guaranty received the Trust Family documentation that it had requested in its April 12, 2013 letter to Martin Twist. On March 20, 2014, Teema submitted a claimant's statement to Fidelity and Guaranty on behalf of the trust and as beneficiary under the policy. Teema later made a further demand through counsel to Fidelity and Guaranty for payment.

On June 30, 2014, Fidelity and Guaranty, through counsel, advised the Family Trust that the company would not be paying the proceeds from the insurance policy to the Family Trust, in part due to Martin Twist's failure to submit the Family Trust document to the company as requested in its April 12, 2013 letter. The June 30 letter also indicated that the company would not fulfill the Family Trust's claim under the policy due to the trust documents having been executed three days after the change of beneficiary request was submitted. The company's position was that the beneficiary of record on the policy remained the Hunter R. Twist Irrevocable Trust.

Fidelity and Guaranty subsequently filed this interpleader action on July 25, 2014, naming Teema, as trustee of the Family Trust, Bryan J. Dillon, as trustee of the Hunter R. Twist

2

Irrevocable Trust, and the estate of Martin R. Twist as claimants.[1] (Pl.'s Compl. [DN 1].) Both Hunter R. Twist, the son of Martin Twist, by his next of friend Michelle Tomes, and Tamara Twist, the daughter of Martin Twist, were allowed to intervene, and they now move for summary judgment claiming the Hunter R. Twist Irrevocable Trust is the beneficiary under the policy. Teema also moves the court for summary judgment claiming the Family Trust is the beneficiary under the policy.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence

---

[1] Fidelity and Guaranty successfully moved this court to dismiss the company as a party to this action with prejudice, discharging it from any and all liability with respect to the life insurance policy benefits payable as a result of the death of Martin R. Twist. [DN 73].

of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

This case turns on the issue of whether the change of beneficiary under the life insurance policy from the Hunter R. Twist Irrevocable Trust to the Family Trust was valid. There is no dispute as to the material facts surrounding the events in question. The only issue is whether those events were legally sufficient to change the beneficiary under the policy. Therefore, summary judgment is appropriate in this case.

#### A. SUBSTANTIAL COMPLIANCE

Kentucky courts adhere to the doctrine of "substantial compliance" when determining whether a change in beneficiary on an insurance policy is valid. So long as there has been "substantial compliance with the formalities or terms of the provisions in the policy as to [the] change of beneficiary[, the change] is sufficient." Hill v. Union Cent. Life Ins. Co., 513 S.W.2d 808 (Ky. 1974). Thus, whether a party has substantially complied with the policy depends on two factors: the precise terms of the policy, and the actions taken by the insured to conform with those terms.

In this case, the insurance policy purchased by Martin Twist requires very little to change the beneficiary designation. The terms of the policy state that the insured may change the beneficiary "by Written Request." (Pl.'s Compl. [DN 1-2] at 9.) "Written Request" is further defined in the policy as "[a] request written to us and received by us." (Id. at 6.) There is no dispute that he made a written request and it was received by the insurance company. Both Tamara Twist and Hunter R. Twist argue that Martin Twist did not substantially comply with the

requirements to change the beneficiary because he made no apparent attempt to comply with the request made in the April 12, 2013 letter to provide the trust documents to the insurance company before his death. Because of this failure, both argue that Martin Twist fell short of doing "all he could do under the circumstances." Hill, 513 S.W.2d at 808 (internal quotations omitted). The Court rejects this argument. Martin Twist not only substantially complied, but he fully complied with the policy requirements for changing the beneficiary designation. There is no policy provision which states that a beneficiary request change will not be valid unless certain other documents are provided to the insurance company. Perhaps the insurance company needed the trust documents to "process" the change administratively, but the policy does not require it to effectuate a beneficiary change. Clearly then, Martin Twist did "all he believed necessary to effect the change, or what the ordinary layman would believe was necessary to accomplish the change." Hill, 513 S.W.2d at 808–09 (internal quotations omitted).

The change of beneficiary form lists "Martin R. Twist Family" as the beneficiary, not the Martin R. Twist Family Trust. However, there is sufficient evidence that Martin Twist intended to name the Family Trust as the beneficiary. See Hart, 201 S.W.3d at 461 (finding that, when there is a "clear and unequivocal intent by the insured to change the beneficiary of his policy and . . . he [has] substantially complied with the terms of his contract," the change will be effective).

First, the trust was formally executed only three days after Twist completed the beneficiary form. The contemporaneous nature of the two events indicates an intent to name the Family Trust as the beneficiary under the policy. Second, Fidelity and Guaranty understood the beneficiary to be the Family Trust, as the company specifically requested trust documents from Twist in the April 12, 2013 letter. Fidelity and Guaranty also acknowledged that they understood the intended beneficiary to "presumably" be the Family Trust in their June 30, 2014

5

letter to counsel for the Family Trust, demonstrating that there was little ambiguity in what Martin Twist intended when he submitted the change of beneficiary form. (Pl.'s Compl. [DN 1-11] at 2.) And third, no party has offered evidence that Martin Twist intended anything but to change the beneficiary to the Family Trust. Both Tamara Twist and Hunter R. Twist argue that the change of beneficiary was ineffective, and Tamara Twist raises doubts as to Martin Twist's motivations for attempting to change the beneficiary to the Family Trust. But there is no evidence that Martin Twist did not intend to name the Family Trust as the beneficiary when he submitted the form on March 26, 2013.

Based upon the terms of the life insurance policy, the actions taken by Martin Twist, and the intent underlying his actions, Martin Twist substantially complied with the change of beneficiary procedure under his policy. Therefore, his change of beneficiary to the Martin R. Twist Family Trust was valid.

### B. DATE OF TRUST CREATION

Tamara Twist and Hunter R. Twist both raise alternative arguments for invalidating the change of beneficiary to the Family Trust. First, Tamara Twist argues that the change of beneficiary could not be effective due to the trust documents being executed three days after the change of beneficiary form was completed. However, the Court rejects this argument as well.

The trust documents were executed within a substantially contemporaneous time frame as the change of beneficiary. The change of beneficiary form was completed on Tuesday, March 26, 2013, while the trust documents were executed on Friday, March 29, 2013. Martin Twist's attorney who drafted and oversaw the execution of the trust documents has also submitted evidence that the Family Trust had been first proposed by Martin Twist in April 2012, and a draft of the trust existed by November 9, 2012. (Def.'s Mot. Summ. J. [DN 79-2] at 2–3.) Martin

Twist clearly intended to create the Family Trust and have it funded by the life insurance policy, and the contemporaneous timeframe in which it was completed with the change of beneficiary form is sufficient to effectuate that change.

Furthermore, the critical point is that the Family Trust existed at the time of Martin Twist's death. Life insurance is "chiefly for the purpose of creating an asset at the death of the insured for the benefit of . . . a named beneficiary," and not sooner. Farley v. First Nat'l Bank, 61 S.W.2d 1059, 1061 (Ky. 1933). Therefore, the fact that the trust documents were executed after the requested beneficiary change is of no legal significance.

### C. IRREVOCABLE BENEFICIARY

Lastly, Hunter R. Twist argues that Martin Twist could not change the beneficiary from the Hunter R. Twist Irrevocable Trust to the Family Trust without the consent of the Hunter R. Twist Irrevocable Trust. This argument is based upon a policy provision. The Fidelity and Guaranty policy states that "[a]ny Beneficiary may be named an irrevocable Beneficiary." (Pl.'s Compl. [DN 1-2] at 8.) The added distinction of being an irrevocable beneficiary requires that each irrevocable beneficiary "give written consent" to any change in beneficiary for it to be effective. (Id.) However, there is no evidence that the Hunter R. Twist Irrevocable Trust was ever made an irrevocable beneficiary under the policy.[2]

The fact that the Hunter R. Twist Irrevocable Trust was an irrevocable trust does not automatically make it an irrevocable beneficiary under the policy. The trust document for the Hunter R. Twist Irrevocable Trust states that the trust "is irrevocable, and Trustor [Martin R. Twist] shall have no right to amend, or revoke this trust." (Intervenor Pl.'s Mot. Summ. J. [DN

---

[2] Despite the terms of the policy indicating that the insured can make a beneficiary an irrevocable beneficiary, neither the terms of the policy nor the form used by Martin Twist to change his beneficiary mentions how this would be accomplished. [DN 1, Att. 2 and 4]. Regardless, there is nothing on the change of beneficiary form that would indicate that Martin Twist intended for the Hunter R. Twist Irrevocable Trust to be an irrevocable beneficiary.

7

78-1] at 4.) The fact that Martin Twist could not revoke the trust, though, does not mean that Martin Twist had to fund the trust with the proceeds of a life insurance policy. Thus, the Hunter R. Twist Irrevocable Trust was not an irrevocable beneficiary under the policy, and no written consent was needed from the trust to remove it as a beneficiary under the policy.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment by Defendant Sarinprapa Teema, as trustee of the Martin R. Twist Family Trust, is **GRANTED**. It is further ordered that the motions for summary judgment by Defendant Tamara Twist and Intervenor Plaintiff Hunter R. Twist are **DENIED**.

cc: counsel of record
    Tamara Twist, pro se